IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs at Knoxville September 15, 2015

**STATE OF TENNESSEE v. MICHAEL LEE PRIEST**

**Direct Appeal from the Circuit Court for Sequatchie County**
**Nos. 2012CR136, 2013CR84      Buddy D. Perry, Judge**

---

**No. M2014-01476-CCA-R3-CD – Filed February 17, 2016**

---

The appellant, Michael Lee Priest, pled guilty in the Sequatchie County Circuit Court to robbery in case number 2013CR84 and received a four-year sentence with the manner of service to be determined by the trial court. As a result of his guilty plea, the trial court revoked a four-year sentence of probation for aggravated assault in case number 2012CR136. After a sentencing hearing, the trial court ordered that the appellant serve both sentences in confinement. On appeal, the appellant contends that the trial court erred by allowing the State to cross-examine his mother about conduct that occurred as a juvenile and by not granting his requests for alternative sentencing. Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN, and D. KELLY THOMAS, JR., JJ., joined.

Samuel F. Hudson (on appeal and at trial), Dunlap, Tennessee, and Norman Lipton (at trial), Jasper, Tennessee, for the appellant, Michael Lee Priest.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; J. Michael Taylor, District Attorney General; and Steve Strain, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In September 2012, the appellant pled guilty in case number 2012CR136 to aggravated assault, a Class C felony, and received a five-year sentence to be served as one year in confinement and the remainder on supervised probation. On July 26, 2013, a probation violation warrant was filed, alleging that the appellant violated probation by being arrested on July 20, 2013. In September 2013, the Sequatchie County Grand Jury indicted the appellant in case number 2013CR84 for aggravated robbery committed with a deadly weapon on July 20, 2013.

On October 28, 2013, the trial court held a probation revocation hearing in case number 2012CR136. During the hearing, Detective Keith Herron of the Dunlap Police Department testified that on July 20, he learned that the appellant had "pulled a knife on two Hispanic males and robbed them of cash and jewelry." Detective Herron assisted another officer with arresting the appellant. Detective Herron advised the appellant of his rights and interviewed him at the police department. The appellant gave the officer a written statement in which he said that he went to his girlfriend's house and found her having sex with a Hispanic male. Two other Hispanic males were also in the home. The appellant admitted to Detective Herron that he took money, a watch, and a ring from the men but denied that he used a knife. On cross-examination, Detective Herron testified that he thought the appellant had a "drug habit." On redirect examination, Detective Herron testified that the appellant appeared "normal" during the interview. The appellant was "excited," but nothing indicated that he was intoxicated. At the conclusion of the hearing, the trial court found that the appellant had violated his probation but withheld judgment in that case until the disposition of case number 2013CR84.

On May 19, 2014, the appellant pled guilty in case number 2013CR84 to robbery, a Class C felony, as a lesser-included offense of aggravated robbery. Pursuant to the plea agreement, the appellant was to receive a four-year sentence with the manner of service to be determined by the trial court after a sentencing hearing.

At the beginning of the sentencing hearing, defense counsel advised the trial court that he was objecting to the presentence report because "[i]t incorrectly lists an incident or a juvenile conviction for [the appellant] that should not have been included in the Presentence Report." The trial court agreed with defense counsel.

Gerina Daniel, the appellant's mother, testified that the appellant began using drugs when he "started hanging around with that girl." The appellant's father was in prison for most of the appellant's life and was still incarcerated at the time of the hearing. Daniel said that she used to have a substance abuse problem but that she had been sober for almost five years. She said that if the trial court granted the appellant an alternative sentence, he would live with her. She said that she wanted the appellant to become

involved with "AA" and that he would go to church "on a regular basis." She said the appellant had found God and had made a lot of changes in his life while incarcerated.

On cross-examination, Daniel acknowledged that the appellant had several convictions for domestic violence but stated that "I wouldn't always say they were all his fault." The following colloquy then occurred:

> Q Okay. Were you ever the victim of one of those assaults?
>
> A We've been in arguments.
>
> Q That wasn't my question. Were you ever the victim?
>
> A He's never assaulted me, no.
>
> Q Okay. He had Ohio charges as a juvenile, were you involved in that?
>
> [Defense counsel]: Your Honor, I've objected to that.
>
> THE COURT: I think he can ask her what she knows about it. I think the conviction is not permissible, but I don't think he's precluded from asking and I'll allow him to do so.

Daniel stated that the appellant had an argument with her ex-boyfriend when the appellant was a teenager and that "kids are unruly sometimes."

The appellant testified that he began using drugs because his girlfriend used them and that he had been using drugs for only a few months at the time of the robbery. He stated, "It grabbed ahold of me and I didn't realize it until it was too late." The appellant acknowledged that he was "high" on the day of the crime and said that "if I wasn't high it would have never happened." He said he had been incarcerated and had not used any drugs since that day. The appellant was a student at Chattanooga State Community College at the time of his arrest, had been working since he was a juvenile, and hoped to return to college upon his release because he was just one semester shy of becoming a certified welder. He stated that he had a four-year-old son to support and that "I'm not above doing anything for work."

The appellant testified that at first, he was "doing great" on probation for his aggravated assault conviction. However, he "ran into this girl" and "just lost sight of everything." He said he was terrified of serving eight years in confinement and that he wanted to break the "cycle" of a father being incarcerated and away from his son. Regarding the issue with his mother's ex-boyfriend, the appellant stated, "He was, he was a mean person. Not just to me, not just to my brother, but to my mother as well, and I felt that it was my job to step in and I was took away for that." He acknowledged that he was convicted of assault in Ohio when he was nineteen. He said that he was from a "rough" city and that "where I'm from it's normal for fights to happen." In 2011, the appellant was convicted of misdemeanor assault and domestic assault after an altercation with a man who was dating his son's mother. In 2012, the appellant also entered a best interest plea to aggravated assault so that he could "go on about life." He said he had been attending church and anger management class while in the Sequatchie County Jail and that he had learned about "other ways to handle anger than just acting out on somebody."

On cross-examination, the appellant testified that his son's mother was present during the altercation with her boyfriend and that he was convicted of a second domestic assault "because she was there." The appellant was not using drugs at the time of the assaults, and the appellant received sentences of unsupervised probation for all of his misdemeanor convictions.

The State introduced the appellant's presentence report into evidence. According to the report, the then twenty-five-year-old appellant dropped out of high school when he was in the tenth grade but obtained his GED and was taking classes in the welding program at Chattanooga State at the time of the offense. In the report, the appellant described his physical health as "excellent" but said that he had mental health problems and was taking medication for bipolar disorder and anxiety. The report showed no employment history because the appellant "was a full-time student at the time of the offense and has been in [custody] since that date." The report showed that the appellant had one conviction of aggravated assault in 2012 when he was twenty-three, two convictions of domestic violence and one conviction of simple assault in 2011 when he was twenty-two, and one conviction of simple assault in 2008 when he was nineteen. The report showed that the appellant also was adjudicated delinquent of domestic violence in 2004 when he was fifteen.

At the conclusion of the hearing, the trial court stated that the appellant was "a very bright young man" but that his "assaultive behavior is escalating." The court noted that the appellant had received probation in the past but that "that's not worked." The trial court ordered that the appellant serve his sentences in case numbers 2013CR84 and 2012CR136 in confinement. The judgment reflects that the appellant was to serve his four-year sentence consecutively to the previous five-year sentence.

## II. Analysis

The appellant claims that the trial court erred by allowing the State to cross-examine his mother about conduct that occurred when he was a juvenile because domestic assault is not a crime that would qualify as a felony if committed as an adult. He contends that the testimony was prejudicial in that "it appeared to improperly impress upon the Trial Court that [he] had a long history of criminal conduct." The appellant also claims that the trial court erred by ordering that he serve his "sentences" in confinement and that the court should have allowed him to serve his sentences on supervised probation with routine drug testing. The State argues that the trial court properly allowed the State to question the appellant's mother about his juvenile conduct and that the court did not abuse its discretion by ordering confinement. We agree with the State.

Appellate review of the length, range, or manner of service of a sentence imposed by the trial court are to be reviewed under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012); see State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the standard to alternative sentencing). In sentencing a defendant, the trial court shall consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn.Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

An appellant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a). The appellant's sentence meets this requirement. Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). Tennessee Code Annotated section 40-35-103(1) sets forth the following sentencing considerations which are utilized in determining the appropriateness of alternative sentencing:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

See also State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996).  Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed."  Tenn. Code Ann. § 40-35-103(5).  A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

As to the appellant's claim that the trial court erred by allowing the State to cross-examine his mother about his juvenile conduct, we disagree with the appellant. According to the appellant, Tennessee Code Annotated section 40-35-207(a)(4) "does not allow the PSI report to include any prior juvenile convictions except those that would be a Class A or B felony if committed by an adult."   However, the appellant has misinterpreted the statute.   Tennessee Code Annotated section 40-35-207(a)(4) provides that the presentence report must include acts a defendant committed as a juvenile that would constitute Class A or B felonies if committed by an adult but is silent as to acts committed as a juvenile that would constitute lesser felonies or misdemeanors. Moreover, our supreme court has stated that

"[i]t would serve neither the interest of society, nor protect the public from further criminal conduct by the defendant, to wipe the slate clean and deny the sentencing authority the benefit of a defendant's past history of criminal activity, in assessing his sentence, simply because some part of that history occurred during his juvenile years."

State v. Adams, 864 S.W.2d 31, 34 (Tenn. 1993) (quoting State v. Stockton, 733 S.W.2d 111, 112-13 (Tenn. Crim. App. 1986)).  This includes consideration of acts committed as a juvenile that would constitute misdemeanors if committed by an adult.  See, e.g., State

v. Farmer, 239 S.W.3d 752, 756 (Tenn. Crim. App. 2007) (concluding that trial court properly denied alternative sentencing based upon defendant's prior criminal record, which included juvenile adjudications for disorderly conduct and criminal trespass); State v. Robert Donterious Conner, No. M2007-01619-CCA-R3-CD, 2008 WL 4614449, at *14 (Tenn. Crim. App. at Nashville, Oct. 17, 2008) (concluding that trial court properly considered defendant's prior juvenile record, which included adjudications of assault and disorderly conduct, in ordering consecutive sentencing).

As to the appellant's claim that the trial court erred by denying his request for alternative sentencing, the trial court was troubled by the young appellant's "escalating" behavior despite his receiving prior sentences of probation and specifically stated that it was denying alternative sentencing based upon considerations (A) and (C), that confinement was necessary to protect society by restraining the defendant who had a long history of criminal conduct and that measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. The record reflects that the appellant committed assaults, then domestic violence, then aggravated assault, and now robbery. Moreover, prior probation sentences have done nothing to curtail his behavior. Thus, we conclude that the trial court did not abuse its discretion by ordering that the appellant serve his four-year sentence for robbery in confinement.

To the extent that the appellant is arguing that the trial court also erred by denying his request for alternative sentencing in case number 2012CR136, upon finding by a preponderance of the evidence that the appellant has violated the terms of his probation, a trial court is authorized to order an appellant to serve the balance of his original sentence in confinement. See Tenn. Code Ann. §§ 40-35-310, -311(e); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Probation revocation rests in the sound discretion of the trial court and will not be overturned by this court absent an abuse of that discretion. State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995); see State v. Pollard, 432 S.W.3d 851, 864 (Tenn. 2013) (concluding that abuse of discretion with a presumption of reasonableness is the appropriate standard of appellate review for all sentencing decisions). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010).

The appellant does not dispute that he violated probation. This court has repeatedly cautioned that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. at Nashville, Feb. 10, 1999); see State v. Timothy A. Johnson, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. at Nashville, Feb. 11, 2002). Thus, the

trial court also did not err by ordering that the appellant serve the balance of the five-year sentence in confinement.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA MCGEE OGLE, JUDGE